Next case is Altair Instruments v. Kelley West Enterprises, 2017-1194 in 1284. Mr. Oynous? Yes, thank you, Your Honor. Morning. May it please the Court, Counsel. Ron Oynous of Rutan and Tucker for the Appellant and Cross Appellate, Altair Instruments, Inc. I'd like to first address the issue of collateral estoppel. Your Honors, there are no cases that have been cited, and there are none that I'm aware of, in which the Ninth Circuit has held that it is proper to apply collateral estoppel to an interlocutory order that has not been appealed or was not appealable. The Lubin case says we need to figure out if it's sufficiently firm for collateral estoppel purposes, which then maybe opens up the door to perhaps decisions being made that, based on the character of the process of the decision, one could say that it is sufficiently firm. The Lubin case also, Your Honor, and this is very important, relied on the restatement of judgments, section 13, comment G in particular, and in fact highlighted, literally highlighted, the section of that comment that asked whether the interlocutory order was appealed or was subject to appeal, and found, of course, that it was not proper to apply collateral estoppel in that case. But that issue was determined, that microdermabrasion was added in response to a rejection over Kim, and that issue was finally decided, and so why shouldn't it be collateral estoppel? Well, Your Honor, I respectfully disagree that it was not finally decided for purposes of applying collateral estoppel, and I think that's what Lubin stands for and what the cases in the NYSERDA that have followed Lubin stand for. The Lubin court also, if you read the opinion, not only relied on, I think heavily relied on, the particular comment G to section 13, which again asked whether the interlocutory order was subject to appeal or was appealed, the Lubin court went on to say that it was convinced that the party in that case, the government, did not have a full and fair opportunity to appeal the earlier ruling, and therefore collateral estoppel didn't apply. And the Lubin case was relying on the Park Lane hosiery case, which is a Supreme Court case, for that statement. And if you look at the cases that have come since Lubin in the Ninth Circuit, you've got additional cases that are relying on Lubin for the proposition that collateral estoppel can't apply to an interlocutory order that's not appealable or was not appealed, and that's the St. Paul case specifically cited Lubin for that proposition. The appealability here of Judge Wu's prior intervening rights order was interrupted by your settlement of that case, right? Correct. So I guess I'm wondering, you could have sought an order vacating the intervening rights order as a condition for the settlement in that case. We could have, Your Honor, but I would point to both Ninth Circuit and Federal Circuit cases in this area, which essentially say the failure to take an action, for instance, to seek an appeal of an interlocutory order before final judgment, the failure to do that does not change the collateral estoppel analysis. And the Federal Circuit said that in the Verdun case and also in the Interconnect case. The Ninth Circuit has said it in the St. Paul case. So I think the courts have been fairly consistent that although, yes, we could have done that or we could have sought an interlocutory appeal, we didn't do that, but the courts have said you don't punish a party for not doing that. Yes, alternatively, we have in front of us the independent question of whether, in fact, there was a narrowing amendment here during the second re-exam that's been fully briefed and argued before us. And so I guess the question is, why wasn't there a narrowing here when the specification defines microderm abrasion quite broadly? It defines it to include derm abrasion, which I found befuddling, but then it also said the removal of dead skin cells. And then in the second re-exam when the term is actually added to the claim in the response to the office action, it was made clear that it doesn't include exfoliation. I know you might have an argument that says that that's not a right reading, but let's just assume for the moment that that's how I read it. Then why isn't that a narrowing of the claim, which was more open-ended, that permitted something broader and that likely did include exfoliation? Well, Your Honor, I think, first of all, I do disagree that that's a proper reading of that, but understanding your taxidermy to accept that. The specification of the 739 patent always made clear that microderm abrasion, which it did in one place in the 739 patent, did say also referred to as derm abrasion. But the microderm abrasion, as claimed in the patent, the specification says that it is the process of removal of cells from the epidermis, and you do this without damaging the dermis. So that has been the definition from the beginning. Now, exfoliation, I think it's generally well accepted, and we've cited to our expert in the report, but exfoliation is a type of microderm abrasion. Microderm abrasion is a mechanical exfoliation, and so I don't think the inventor was disclaiming exfoliation because that would really be impossible. I mean, exfoliation is the sort of removal of skin, and you can do that many ways. There are exfoliation brushes. There are exfoliation creams that have kind of a sand in them, if you will. Microderm abrasion also exfoliates. So I don't think the inventor was excluding exfoliation. They're not mutually exclusive. And so I hope I've answered your question. I've tried to. But if you look at the evidence kind of dealing with the issue of infringement now, but it's really never been disputed that microderm abrasion is a type of mechanical exfoliation. I mean, the presser's own product literature makes that clear. And so I think what the inventor was doing in describing these various skin procedures was saying, you have exfoliation, and when the exfoliation is discussed, there's no discussion of, like, a structure of how you would do that. It's just saying, you know, it's kind of the removal of skin by gently scraping of the skin. But then talked about microderm abrasion as having the specific structure of, you know, attaching an abrasive to the tube and essentially exfoliating the skin that way. And so the reason, Your Honor, that we don't think that intervening rights apply here, and we are hopeful that the court will reverse on collateral estoppel and actually rule on the issue of intervening rights, that's really all we want. We want to have one opportunity to appeal that substantive ruling. And if you look at the specification, which I discussed briefly, but there are other parts of the specification that I think are key, where the inventor talks about the device for microderm abrasion, and the invention provides the capability to perform microderm abrasion. As you know, this patent has been vetted three times now. And in the first reexamination, the inventor again continued to say that, quote, unquote, the claimed invention is a device for microderm abrasion. During the second reexamination, even the examiner never took the position that this patent is somehow more broad than microderm abrasion or more broad than removing the epidermis without damaging the dermis. Rather, what the examiner was saying is we think the Kim patent discloses a device that does that. But the claims were allowed over Kim after the amendment, so the amendment had to have done something. Well, I think it's similar to the Convolve case, Your Honor, which the amendments were made after a rejection based on prior art, and the amendments were made. And this court, I believe Judge Hughes wrote that opinion, this court said that that was not a narrowing because you don't necessarily have a narrowing even though an amendment is made in response to prior art. And, Your Honor, I will point out that Alter was consistent. During the second reexamination, Alter specifically said, after repeatedly arguing, our patent is limited to microderm abrasion, Kim doesn't perform microderm abrasion, the patent examiner finally agreed with that. And Alter specifically said, we'll specifically add the word microderm abrasion and we'll specifically add removal of the epidermis without damaging the dermis to the remaining claims where microderm abrasion is not already explicit. I think the examiner said that the Kim device does exfoliation, right? And then that's what triggered your side to add the term microderm abrasion and then specify meaning for microderm abrasion in a very detailed way. And made it clear that it's not exfoliation. And this specific definition is a different definition than the one I saw in the beginning of the specification for microderm abrasion in the patent. Your Honor, I don't believe the examiner ever said the Kim patent exfoliates. I believe Presser has taken that position. I don't believe that's in the patent examiner's statement. What the patent examiner said was this, you know, spatulated tongue cleaner or scraper could potentially perform microderm abrasion or could potentially remove cells from the epidermis. We're into your rebuttal time. You wanted to save three minutes and you're well into it. I do, Your Honor, unless there are any specific questions. I will save the rest of my rebuttal time. We'll save it for you. Thank you. Is it Mr. Trost? Trost, Your Honor. Glenn Trost. Thank you. As in prost. I think that perhaps an easy way to think about some of the questions that have come up is to focus on a device that removes only the dead cells, only does exfoliation. This is kind of a these kinds of devices come up frequently in this case, not only on the validity questions but also on infringement because our expert testified in her expert report said that the accused device does only exfoliation. It does not remove the live cells of the epidermis. You don't want to first defend collateral estoppel? Yes, and I'm getting to that. Let me jump on collateral estoppel then. The court has identified that the Lubin case in the Ninth Circuit does specifically address the rule that should apply, although in the case before on the facts before the Ninth Circuit in Lubin, the district court had declined to use its discretion to apply collateral estoppel and the Ninth Circuit affirmed that exercise of discretion. In the Lubin case, the government had two parallel cases going on the same tax issue. It lost in the first case, but it had not yet gotten its appeal heard, and then the Lubin case won the race to the Ninth Circuit. The Lubin case, the district court said, well, you've already lost this issue once, but I'm going to let you litigate it again. They got up to the Ninth Circuit for review, and the taxpayer said, well, you should have applied that earlier ruling, and the Ninth Circuit said in this circumstance it would be unfair to do so. Now, the fairness issue is distinct from the finality issue here. The finality under the Ninth Circuit standard is a matter of discretion for the district court. It has to be sufficiently firm, and there are a number of factors that the court looks at to make that determination. If it's determined to be final, sufficiently firm, then there's a second question, assuming all the other requirements are met, and that is, is it fair in this circumstance to apply collateral estoppel? That's another discretionary decision for the district court that will be reviewed for abuse at the next level. Both of those issues were kind of percolating in the Lubin case and led to the Ninth Circuit agreeing that it was inappropriate to or that the district court was within its discretion to determine that the government shouldn't be collaterally stopped in that case. The other side pointed to a comment in the restatement judgments. Yes, the Lubin court cited to the restatement of judgments. One of the comments indicates that there are some factors to consider in determining finality, and the Ninth Circuit largely adopted that in its discussion of what the district court ought to look at when determining if a decision is sufficiently firm. Now, we cited in our briefs the Security People case, which is another district court case, the Northern District of California, Judge Legge, up in the Northern District, who had a case very, very similar to our facts, summary adjudication in case number one, settled before judgment was entered, and then argued that the summary adjudication ought to be applied in case number two. If we uphold the collateral estoppel holding, we don't get to intervening rights. Correct. That's correct. Because Judge Wu determined that adversely to Altair, and they never took an appeal on that. Now, you've got a cross appeal. Lots of cross appeals are sort of by the way and minor issues. You've got some major issues. Yes. Because you're still out there. The most interesting of the issues is the indefinite, indefiniteness argument. We argued below that the apparatus claims were limited by functionality, user actions, and so were indefinite under Williamson. Basically, after the reexamination, all of the claims, all the apparatus claims, required that the user use the device for microdermabrasion, which was now specifically designed to exclude mere exfoliation. Obviously, if you have layers of skin, the first layer is the dead cells and debris. When that's removal is exfoliation, that reveals the living cells. Then as those cells are removed, that is the new definition of microdermabrasion, different from the definition in the spec as the court has observed. If you just have the device, just the apparatus, you don't know how it's going to be used. It could be used for mere exfoliation, in which case it would not be infringing, or it could be used for microdermabrasion, in which case it would now fall within the claims. Under Williamson, that kind of functional limitation, unsupported by a specific disclosure in the specification, is invalid. Can you add Section 112, Paragraph 6, Section 112, Paragraph F, to the preamble of a claim? I don't have one on the top of my head, but the preamble here... As I understand it, that's what you're asking us to do. Not entirely. Now, the functional limitations come both from the preamble and from the body of some of the apparatus claims. For example, Claim 16 has the requirement that, in use, the cells of the epidermis are removed. But if we go to the prosecution history, Altair specifically argued in the reexamination that the preamble should be limiting, in addition to the additional structural limitations following the word comprising, that they should be limiting in this case, and that is at pages 307 to 08 of the appendix. That's a specific argument that Altair made, which I think takes this case outside of the usual rule that the preamble is not limiting, only the limitations are limiting. So in our view, Williamson applies equally to the preambles in this case, but in any event, there are other operational limitations in the body of the limitations that follow the word comprising. So that brings this case within Williamson, because there is no corresponding disclosure in the spec about how exactly that's done. In fact, the record reveals that how much skin is taken off is entirely up to the user, and it's not a function necessarily of the device. Well, there are opinions from this court that say when there can be functional language and the functional language constitutes describing a property of some product or structure, and so maybe what's going on here is to be an infringing device, you have to be a device that is in fact capable or suitable for performing microdermabrasion. What's wrong with that? That would have been a plausible interpretation, but it was not the one adopted by the district court, and frankly I don't think it was one that was pursued during the reexamination. The argument in the reexamination was that the device had to be used to remove living cells of the epidermis, and that restriction was placed in the claims that it says a device for microdermabrasion with this microdermabrasion having the new definition, and then moreover, as I've indicated, the limitations themselves then go on to say during use living cells are removed from the epidermis. In addition, that kind of use restriction runs afoul of this court's opinions in the IPXL case and the other cases we've cited where an apparatus claim is limited in part by user actions. Anyway, that's the main issue on the cross appeal. The remaining issues have to do with, they were just fact issues created with respect to infringement and validity. Again, the accused device removed only dead cells, did not remove living cells. The district court found that it does microdermabrasion, which must mean it removes cells from the epidermis, and so therefore it infringes, but at the same time he rejected prior art such as Shirley because there was no suggestion that it removed the epidermis, it only removed dead cells. So we have a situation here. I see I'm in my rebuttal time. I'll try to tie this up. We have a situation where the claim construction that we were facing was fluid. It depended on whether we were arguing about infringement or arguing about validity. Where in a claim construction did the court say that microdermabrasion entails removal of live cells? In respect in the court's discussion and rejection of the Shirley prior art patent, and that's at page 3301 of the appendix. He rejected that by saying there's no suggestion that Shirley discloses removal of the epidermis. It's only for removing dead cells on the surface. And our expert had in a declaration or expert reports on both invalidity and. That could be interpreted as meaning that whatever Shirley is doing, it is simply too light of a touch to be regarded as microdermabrasion without necessarily microdermabrasion needing to be removing live cells from the epidermis. That may be so, Your Honor. But from our perspective, the key point is that both the accused device, according to the expert, both the accused device and the prior art did the same thing, just remove dead cells. And we were found both to infringe and the prior art not to anticipate, which is inconsistent. Real quickly, does Shirley have abrasive material? It has a beveled edge, which the patent, the specification indicates, is one form of abrasive material that could be employed in the patented device. So it has kind of a sharp beveled edge that scrapes rather than a fine powder. But the specification contemplates that. It does? Yes, I'd be happy to bring that to your attention. If not today, I'll send a short letter in accordance with the court's rules. But I'll reserve the balance of my time. We will do that, Mr. Trost. I have to tell you, though, that your remaining time, if you don't use it now, would be limited to rebuttal. I understand. And that depends upon what Mr. Oynous has to say. So we'll hear from Mr. Oynous now. Thank you, Your Honor. This issue of dead and living cells is a red herring. Dead and living cells wasn't discussed in the prosecution history. I don't believe it was discussed in Judge Reel's order. The question is whether you remove cells from the epidermis without damaging the dermis. And I wanted to make one point, which does go a little bit to both the non-infringement argument but also can be relevant to intervening rights, and that is Presser has relied on this statement and this sort of definition during the second reexamination by the inventor. I'm sorry, by Mr. Walker, who's not the inventor. He was the later owner of the company. But he describes what microdermabrasion is, and he describes exactly Presser's device. And so to argue based on that that somehow Altair disclaimed that device just doesn't make any sense. It specifically talks about microdermabrasion is, in this patent, microdermabrasion is the attachment of the abrasive, as Judge Jen recognized with this question a moment ago, permanent attachment of an abrasive to the treatment tip. The Shirley device does not disclose a permanently attached abrasive to the tip. The Shirley device discloses a, I think it refers to it as a cup or the edge of a cup. There's no abrasive attached to it. And in fact, in terms of the prior art that Presser has relied on in this case, the only prior art that actually had an abrasive attached to it was the drill bit for drilling marble and stone that Judge Reel rightly found was not analogous art. The only other two references, Shirley and Brenner, absolutely have no abrasive attached. And that was the key, one of the key things of Mr. Waldron's invention was you take the abrasive and you actually apply it to the treatment end. Then you don't have to have these crystals that was the prior microdermabrasion art. If I can just quickly address Williamson, the argument of indefinites on Williamson, I think Judge Reel correctly found that there's, unlike Williamson, there is a lot of structure to perform the function of microdermabrasion disclosed in all of these claims. And so Williamson is not persuasive. In IPXL, I think the issue there and some other cases was that the claim language actually included user action. That's not the case here, and so those don't apply. And finally, just if I can close on collateral estoppel to sort of circle back, I think it's important to note that this court, when it ruled in the Verdun case, applying Seventh Circuit law, specifically noted that Verdun relies, or I'm sorry, Seventh Circuit relies on this restatement, Section 13, Comment G. Again, that's the exact same restatement, Section Comment G, that the Ninth Circuit relied on in Lubin and has continued to rely on. And the standard of review, we believe, is de novo. Since Lubin, the Ninth Circuit, in both Bates and the McKeon case that we cited, has specifically said, whether collateral estoppel is available is reviewed de novo. Now, Bates did go on to say- Thank you, Mr. Ornish. The court has intervening rights, and we intervene to exercise the right to terminate your argument. Thank you, Your Honor. I appreciate your consideration. Thank you. Mr. Trost has a little rebuttal time, only in the cross appeal. Your Honor, I'm happy to answer any questions the court might have. Otherwise, I'll surrender the balance of my time, and I will find a site for the court and send it along in accordance with the rules. Thank you, Mr. Trost. Thank you. We'll take the case under revisal.